Slip Op. 17-13

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| DYNAENERGETICS U.S. INC., | |
| Plaintiff, | |
| v. | |
| UNITED STATES, | Before: Mark A. Barnett, Judge |
| Defendant, | Court No. 16-00045 |
| and | |
| MAVERICK TUBE CORP., | |
| Defendant-Intervenor. | |

## MEMORANDUM AND ORDER

[Remanding Commerce's scope determination for reconsideration in accordance with Defendant's request for a remand.]

Dated: February 7, 2017

Diana Dimitriuc Quaia, John M. Gurley, and Aman Kakar, Arent Fox LLP, of Washington, DC, for plaintiff.

Justin R. Miller, Senior Trial Counsel, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for defendant. With him on the brief were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Claudia Burke, Assistant Director.

Alan H. Price, Robert E. DeFrancesco, III, and Adam M. Teslik, Wiley Rein LLP, of Washington, DC, for defendant-intervenor.

   Barnett, Judge: This matter is before the court on Plaintiff DynaEnergetics U.S. Inc.'s ("DynaEnergetics") motion for judgment on the agency record pursuant to U.S. Court of International Trade Rule 56.2. Confidential Pl. DynaEnergetics U.S. Inc.'s Rule

56.2 Mot for J. on the Agency R., ECF No. 32-1; Confidential Pl. DynaEnergetics U.S. Inc.'s Br. in Supp. of its Rule 56.2 Mot. for J. on the Agency R. ("Pl.'s Mot"), ECF No. 32. Plaintiff challenges the final scope ruling by the U.S. Department of Commerce ("Commerce") that its customized carrier tubing for perforating guns is within the scope of the antidumping ("AD") and countervailing duty ("CVD") orders on *Certain Oil Country Tubular Goods* ("OCTG") *from the People's Republic of China,* 75 Fed. Reg. 28,551 (Dep't Commerce May 21, 2010) (antidumping duty order and amended less than fair value determination) ("AD Order"), 75 Fed. Reg. 3,203 (Dep't Commerce Jan. 20, 2010) (countervailing duty order and amended final countervailing duty determination) ("CVD Order") (collectively, "AD & CVD Orders" or "Orders").  *See generally* Pl.'s Mot; *see also* Antidumping and Countervailing Duty Orders on Certain Oil Country Tubular Goods from the People's Republic of China: Final Scope Ruling on DynaEnergetics U.S. Inc.'s Perforating Gun Carriers (February 12, 2016) ("Final Scope Ruling"), ECF No. 20-1, Public Record ("P.R.") 20, ECF No. 19.[1]  Defendant requests a remand to fully consider the arguments raised by the Plaintiff.  Def.'s Resp. to Pl.'s Rule 56.2 Mot. for J. on the Agency R. and App. ("Def.'s Resp."), ECF No. 39.  Defendant-Intervenor Maverick Tube Corporation ("Maverick") opposes Defendant's request for remand and asks that the court rule on the merits of Plaintiff's motion.  Confidential Intervenor-Def. Maverick Tube Corp.'s Resp. to Pl. DynaEnergetics U.S., Inc.'s Br. in Supp. of its Rule 56.2 Mot. for J.

---

[1]  Defendant filed public and confidential versions of the administrative record as ECF No. 19.  All further citations are to the public version, unless otherwise specified.  Defendant separately filed Commerce's instructions to Customs as ECF Nos. 26 and 27.

on the Agency R. ("Def.-Intervenor's Resp."), ECF No. 41.  For the reasons set forth below, the court grants the Defendant's request to remand the determination to Commerce for further consideration and explanation.

## BACKGROUND

Commerce initiated AD and CVD investigations of certain OCTG from the People's Republic of China ("PRC") on May 5, 2009.  *Oil Country Tubular Goods from the People's Republic of China*, 74 Fed. Reg. 20,671 (Dep't Commerce May 5, 2009) (AD investigation initiation); *Certain Oil Country Tubular Goods from the People's Republic of China*, 74 Fed. Reg. 20,678 (Dep't Commerce May 5, 2009) (CVD investigation initiation).  AD and CVD orders were issued on May 21, 2010 and Jan 20, 2010, respectively.  *See generally* AD & CVD Orders.  The scope of the antidumping and countervailing duty orders was defined as:

> [C]ertain OCTG, which are hollow steel products of circular cross-section, including oil well casing and tubing, of iron (other than cast iron) or steel (both carbon and alloy), whether seamless or welded, regardless of end finish (*e.g.,* whether or not plain end, threaded, or threaded and coupled) whether or not conforming to American Petroleum Institute ("API") or non-API specifications, whether finished (including limited service OCTG products) or unfinished (including green tubes and limited service OCTG products), whether or not thread protectors are attached. The scope of the order also covers OCTG coupling stock. Excluded from the scope of the order are: casing or tubing containing 10.5 percent or more by weight of chromium; drill pipe; unattached couplings; and unattached thread protectors.

AD Order, 75 Fed. Reg. at 28,553; *see also* CVD Order, 75 Fed. Reg. at 3,203-04.  The notices also included relevant U.S. Harmonized Tariff Schedule ("HTSUS") subheadings, which Commerce provided for "convenience and customs purposes only"

noting that the "written description of the scope of the order is dispositive." AD Order, 75 Fed. Reg. at 28,553; CVD Order, 75 Fed. Reg. at 3,204.

On September 25, 2015, DynaEnergetics requested a scope ruling to determine whether its gun carrier tubing falls outside the scope of the AD and CVD orders. Confidential App. to Pl. DynaEnergetics U.S., Inc.'s Br. in Supp. of its Rule 56.2 Mot. for J. on the Agency R. ("Pl.'s Conf. App."), ECF No. 34, Tab 1 ("Scope Ruling Request"), Confidential Record ("C.R.") 1-7, P.R. 1-6. In its request, Plaintiff explained that "[t]he carrier tubing, which is the outer shell of the gun, is a seamless mechanical tube," *id.* at 4, and described it as a "customized product made to exact specifications . . . which combine a very clean steel chemistry, tight dimensional tolerances and enhanced mechanical characteristics . . . dedicated for a single end-use: to be incorporated by DynaEnergetics into a perforating gun used to detonate inside oil wells," *id.* at 2. Plaintiff further explained that "a perforating gun assembly is a single-use device used to perforate existing oil and gas wells in preparation for production using explosive oil charges," and that "[p]erforating tools generally consist of a tube called the carrier which holds the charge holder . . ." *Id*. at 4 (citations omitted).

The Petitioner, Maverick, opposed DynaEnergetics' request, arguing that it is clear from the plain language of the scope that gun carrier tubing is within the scope of the AD & CVD Orders, and that DynaEnergetics' argument rests upon the false premise that gun carrier tubing is mechanical tubing and therefore is excluded from the Orders. Final Scope Ruling at 6-7. After accepting comments from both parties, Commerce issued its scope ruling pursuant to 19 C.F.R. 351.225(k)(1) without initiating a formal

scope inquiry. *See generally id*. In its ruling, Commerce determined that DynaEnergetics' product was within the scope of the AD & CVD orders. *See* Final Scope Ruling at 10-13.

DynaEnergetics timely commenced this action on March 11, 2016 and filed a motion for judgment on the agency record challenging Commerce's scope determination. *See generally* Compl.; Pl.'s Mot. In response, Defendant United States requested a remand to "reconsider [Commerce's] findings in light of DynaEnergetics' contentions." Def.'s Resp. at 9. Defendant-Intervenor Maverick opposed Defendant's remand request and asked the court to address Plaintiff's arguments on the merits. Def-Intervenor's Resp. at 31. Plaintiff's motion is fully briefed and the court held a telephonic hearing on the request for a remand on February 1, 2017. Docket Entry, ECF No. 48. For the reasons discussed below, the court will grant Defendant's request for a remand.

**JURISDICTION AND STANDARD OF REVIEW**

The court has jurisdiction pursuant to § 516A(a)(2)(B)(vi) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(vi) (2012),[2] and 28 U.S.C. § 1581(c).

The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i).

"Commerce enjoys substantial freedom in conducting [ ] scope inquiries," *Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001) (citation

---

[2] All citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code and all citations to the U.S. code are to the 2012 edition, unless otherwise specified.

omitted), and is "entitled to substantial deference with regards to its interpretations of its own antidumping duty orders," *King's Supply Co., LLC v. United States*, 674 F.3d 1343, 1348 (Fed. Cir. 2012). A "scope ruling is a highly fact-intensive and case-specific determination" and "while the plain language of the AD order is paramount, Commerce must also take into account the descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary of Commerce (including prior scope determinations) and the Commission." *King's Supply Co.*, 674 F.3d at 1345 (internal quotation marks, citations and alterations omitted); *see also* 19 C.F.R § 351.225(k)(1). "Since Commerce drafted the antidumping order, the order's meaning and scope are issues particularly within the expertise of that agency. In interpreting its own order, Commerce is performing functions within its special competence." *Sandvik Steel Co. v. United States*, 164 F.3d 596, 600 (Fed. Cir.1998) (internal quotation marks, citations and alterations omitted). "However, Commerce cannot interpret an antidumping order so as to change the scope of th[e] order, nor can Commerce interpret an order in a manner contrary to its terms." *Eckstrom Indus.*, 254 F.3d at 1072 (internal quotation marks and citation omitted).

## DISCUSSION

Plaintiff challenges Commerce's decision that its product is within the scope of the AD & CVD orders as "inconsistent with the evidence on the record describing the product's characteristics and purpose" and Commerce's definition of OCTG as "inconsistent with the scope language and . . . based on non-dispositive subheading descriptions of the [HTSUS]." Pl.'s Mot. at 2-3. Plaintiff further argues that Commerce

should have initiated a scope inquiry and analyzed the (k)(2) factors because the (k)(1) factors were not dispositive of the scope determination. *Id*. at 3; *see also* 19 C.F.R. § 351.225(k)(1), (k)(2).[3]  Finally, Plaintiff argues that "Commerce's instructions to CBP to continue suspension of liquidation, where such instructions have retroactive effect, were contrary to law."  Pl.'s Mot. at 4.

Defendant responds by requesting a remand to fully consider Plaintiff's arguments.  Def.'s Resp. at 9.  During the telephonic conference with the court, Defendant acknowledged that the agency's analysis was cursory and did not fully address DynaEnergetics' arguments.  Defendant asserts this constitutes a substantial and legitimate basis for requesting a remand.  *Id*. at 8-9.  Defendant-Intervenor opposes Defendant's request and asks the court to adjudicate Plaintiff's claim on its merits.  Def.-Intervenor's Resp. at 29-31.

When an agency determination is challenged in the courts, the agency may "request a remand (without confessing error) in order to reconsider its previous position" and "the reviewing court has discretion over whether to remand."  *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001) (citations omitted).  Remand is

---

[3] "The determination of whether a particular product is included within the scope of an antidumping order is governed by regulations published at 19 C.F.R. § 351.225 [ ]." *Eckstrom Indus.*, 254 F.3d at 1071–72.  Pursuant to the regulations, Commerce will first consider "descriptions of the merchandise contained in the petition, and the determinations of the Secretary (including prior scope determinations) and the Commission."  19 C.F.R. § 351.225(k)(1) ("(k)(1) factors").  When the (k)(1) factors are not dispositive, Commerce will consider "(i) The physical characteristics of the product; (ii) The expectations of the ultimate purchasers; (iii) The ultimate use of the product; (iv) The channels of trade in which the product is sold; and (v) The manner in which the product is advertised and displayed." 19 C.F.R. § 351.225(k)(2) ("(k)(2) factors").

appropriate "if the agency's concern is substantial and legitimate," but "may be refused if the agency's request is frivolous or in bad faith." *Id*.

Commerce's concerns are "substantial and legitimate." Defendant requests a remand so that Commerce may "further consider information from the petition and the determination of the International Trade Commission (ITC) pursuant to 19 C.F.R. § 351.225(k)(1)." Def's Resp. at 1. Defendant acknowledges that "Commerce's further consideration of its findings may affect its existing determination not to conduct an analysis under 19 C.F.R. § 351.225(k)(2) and the CBP instructions issued based on its original determination." *Id*. at 9. Defendant acknowledges that the agency's reasoning is cursory and that it would be unable to fully respond to Plaintiff's arguments without resorting to post hoc reasoning. Any such post hoc rationalization would be impermissible. *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168-69 (1962) (the court may not accept "post hoc rationalizations for agency action" and agency action may be "upheld, if at all, on the same basis articulated . . . by the agency itself") (citations omitted).

Additionally, during the telephonic conference, Defendant asserted that finality would be furthered by an immediate grant of its request for a remand because it believed the court would not be able to sustain the agency's determination on the insufficient reasoning offered in the original determination. Defendant further acknowledged that the remand determination only would address whether the product in question is within the scope of the orders and issues related to the customs instructions associated with the scope determination, including any retroactivity of those

instructions. Plaintiff also asks that any such remand allow Commerce to reconsider the customs instructions associated with the scope determination. Reply Br. of Pl. DynaEnergetics U.S., Inc. ("Pl.'s Reply") at 1-2, 5, ECF No. 45.

Maverick asserts two reasons for opposing Defendant's request for a remand, neither of which are availing. First, Maverick argues that all of Plaintiff's arguments before the court were raised before the agency in the administrative proceeding and, therefore, Commerce had every opportunity to address Plaintiff's arguments. Def-Intervenor's Resp. at 30. While DynaEnergetics may well have raised all of the same arguments before the agency, that is not the same as saying that the agency adequately addressed all of those arguments – which is the point made by Defendant. To the extent the agency failed to address these arguments in its determination, counsel cannot make up for the agency's failings in its briefs to the court as that would constitute impermissible post hoc rationalization. *See Burlington Truck Lines,* 371 U.S. at 168-69. Particularly in light of the fact intensive nature of scope determinations, it is imperative that the agency supply the reasoning to support its determination in the first instance. *See King's Supply Co.*, 674 F.3d at 1345; *Sandvik Steel Co.* 164 F.3d at 600.

Maverick also argues that concerns for finality should weigh against granting the request for a remand, particularly when Defendant has not indicated what error occurred. Def-Intervenor's Resp. at 29-30 (citing *Maverick Tube Corp. v. United States*, 39 CIT \_\_\_,\_\_\_, 107 F. Supp. 3d 1318, 1334-35 (2015), and *Corus Staal BV v. United States*, 27 CIT 388, 391 (2003)). In this case, the error acknowledged by Defendant was the failure to fully address the arguments made by DynaEnergetics to the agency.

Unlike the cases cited by Defendant-Intervenor, Defendant does not seek a remand to reconsider or change a statutory interpretation or application of policy. *See* Def.'s Resp. at 8-9. Instead, it seeks to perform the very function it should have performed during the original administrative proceeding – providing a reasoned determination taking into account the facts and arguments before it. *Id.* Such a remand request should only be denied if the request is frivolous or in bad faith, *SKF USA Inc.*, 254 F.3d at 1029, and that is not the case here.

For the reasons stated above, the court grants Defendant's request for a remand to reconsider the scope determination at issue along with, if appropriate, the customs instructions associated with the scope determination.

## ORDER

In accordance with the foregoing, it is hereby

**ORDERED** that Commerce's Final Scope Ruling is remanded to the agency for further consideration in accordance with the terms of this opinion; and it is further

**ORDERED** that the agency shall file its redetermination on remand on or before June 7, 2017; and it is further

**ORDERED** that the agency shall conduct its remand proceeding substantially in accordance with the procedural timeline presented to the court; and it is further

Court No. 16-00045                                                                                          Page 11

**ORDERED** that any party seeking to oppose the redetermination on remand shall consult with the other parties and submit a proposed briefing schedule no later than June 21, 2017.  Such proposed briefing schedule may include a deadline for requesting oral argument.


                                                                /s/     Mark A. Barnett
                                                                Mark A. Barnett, Judge

Dated: February 7, 2017
           New York, New York